IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH O'REILLY** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 23-5188** |
| | : | |
| **CITY OF PHILADELPHIA** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                      **June 14, 2024**

      Unionized Philadelphia police officers working with their assigned K9 (canine) partners sued their employer City in this Court in January 2021 for failing to pay overtime for their after-hours care of their canine partners. The officers alleged the City paid overtime to K9 officers in different departments with different municipal functions but not them. The parties proceeded to a several-day arbitration in 2021 under their union's collective bargaining agreement with the City. The arbitration panel heard extensive evidence including from the officer now before us. The arbitration panel entered an award on September 14, 2021 including setting compensation through June 30, 2024. The City and officers then agreed to settle and release their claims in this Court. The K9 officer now returns claiming the 2021 arbitration award violates the Fair Labor Standards Act. He does not challenge the fulsome arbitration hearing or procedures. He just thinks the arbitration award is unfair given the City pays other K9 personnel but not him or his fellow K9 police officers. He asks we ignore the hearing evidence and findings. But he and his fellow officers already had a full and fair hearing consistent with their collective bargaining agreement. The officer pleads no basis to find an award entered after extensive testimony (including his own) violates federal law because he thinks it is unfair. We grant the employer City's motion for judgment on the pleadings and dismiss with prejudice as amendment is futile.

I.  **Alleged facts**

Joseph O'Reilly works as a K9 officer for the City of Philadelphia Police Department.[1] The Department expects Officer O'Reilly and other K9 officers to house their K9 partners.[2] K9 partners are not pets and are working dogs.[3] Officer O'Reilly feeds his K9 partner twice daily, exercises his K9 partner several times a day, grooms, trains, and arranges veterinary care for his K9 partner.[4] Officer O'Reilly and other K9 officers need to ensure their K9 partner is compatible with other humans and other pets residing with the K9 officers.[5] Officer O'Reilly and other Police Department K9 officers spend between two hours and fifteen minutes and three hours and fifteen minutes caring for their K9 partners during workdays.[6] Officer O'Reilly and other Police Department K9 officers spend between two hours and fifty-five minutes and four hours and forty minutes caring for their K9 partners during off-days.[7]

The issue today arises from the City paying overtime to other employees caring for their K9 partners. The City's Sheriff's Department also employs K9 officers.[8] The Sheriff's Department K9 officers complete similar tasks caring for their K9 partners as do the Police Department K9 officers.[9] The City pays the Sheriff's Department K9 officers two hours of overtime wages per day to care for their K9 partners at home.[10] The City does not pay Police Department K9 officers the two hours of overtime wages per day.[11]

The Police Department also employs K9 officers at the Philadelphia International Airport.[12] Officer O'Reilly and the putative class claimants do not work at the Airport.[13] The Airport K9 officers complete similar tasks caring for their K9 partners as do the Police Department K9 officers working elsewhere.[14] The Airport K9 officers receive two hours of overtime pay per day to care for their K9 partners at home.[15] The federal Transportation Security Administration pays a portion of the Airport K9 officers' wages.[16]

The City does not pay Officer O'Reilly and other Police Department K9 officers overtime pay.[17] Officer O'Reilly and other Police Department K9 officers complained to their union several times over the past ten years to receive overtime pay for caring for their K9 partners.[18] The union serving the Police Department K9 officers explained backpay "was not on the table" but the union would try to negotiate for overtime pay.[19]

### *Officer O'Reilly and the Police Department K9 officers sued the City three years ago.*

Officer O'Reilly and the same Police Department K9 officers sued the City on January 22, 2021 alleging the City failed to pay the Police Department K9 officers overtime since 2018.[20] The Police Department K9 officers alleged the Sheriff's Department K9 officers received two hours of overtime pay per day and complete the same tasks as the Police Department K9 officers.[21] The Police Department K9 officers alleged the Airport K9 officers received two hours of overtime pay per day and complete the same tasks as the Police Department K9 officers not working at the Airport.[22] The Police Department K9 officers detailed the number of hours each officer spends per workday and off-day caring for their K9 partners.[23]

The Police Department K9 officers alleged they complained to their union several times over the past ten years they should receive overtime pay to care for their K9 partners.[24] The Police Department K9 officers alleged their union representatives ignored them.[25] The Police Department K9 officers alleged their union representatives explained backpay "was not on the table" but the union would try to negotiate overtime pay "moving forward."[26]

### *The Police Department K9 officers and the City agree to binding interest arbitration.*[27]

The Police Department and the City's collective bargaining agreement governing the Police Department K9 officers' terms of compensation expired on June 30, 2021.[28] The Police Department's union and the City agreed to binding interest arbitration to resolve disputed

compensation issues.[29] The Police Department's union representative proposed amending the collective bargaining agreement between the City and the Police Department to include "a pay differential to bargaining unit members assigned to the K-9 Unit, to reflect the additional off-duty time and expense required to care for the canines in their custody and control."[30]

The arbitration panel held hearings between June 21 and June 25, and July 19, 23, 26, 27, and 28, 2021.[31] Both the City and the Police Department had the full and fair opportunity to present documentary evidence, witness testimony, cross-examine witnesses, and argue before the panel.[32] The arbitration panel on September 14, 2021 awarded the Police Department K9 officers an additional two hours' wages per week to pay the officers for the time spent caring for their K9 partners.[33] The arbitration panel's award defines the overtime pay from July 1, 2021 until June 30, 2024. The Police Department union's appointed arbitrator did not dissent from the arbitration award.[34] The City's appointed arbitrator dissented from the award.[35]

### *The Police Department K9 officers and the City settle the first lawsuit.*

The Police Department K9 officers and the City settled the first lawsuit in November 2022.[36] The parties' settlement award concerned K9 officer time spent caring for their K9 partners between January 21, 2018 and July 1, 2021.[37] The Police Department K9 officers agreed to release their claims for unpaid wages between January 21, 2018 and July 1, 2021 in engage for a monetary settlement.[38] The Police Department K9 officers did not agree to release the right to challenge the binding arbitration interest award.[39]

### *The K9 officers now sue claiming the 2021 arbitration award violates federal law.*

Officer O'Reilly and a class of similarly situated Police Department K9 officers waited over thirteen months and then sued the City in December 2023 alleging the City's failure to pay the officers overtime pay to care for their K9 partners violated the Fair Labor Standards Act, the

Pennsylvania Minimum Wage Act, Pennsylvania Wage Payment and Collection Law, and constituted unjust enrichment.[40] The Police Department K9 officers allege the City refused to pay the officers for the time spent caring for their K9 partners at home.[41] The Police Department K9 officers request unpaid overtime wages.[42]

## II. Analysis

The City answered and moved for judgment on the pleadings.[43] The City argues Officer O'Reilly and the Police Department K9 officers sued the City in 2021 alleging the same legal theories in a "largely identical" complaint.[44] The City argues the union representing the Police Department K9 officers agreed on March 11, 2021 to proceed to binding interest arbitration with the City to resolve disputed issues in the parties' collective bargaining agreement.[45] The City argues the Police Department K9 officers waived and released their Fair Labor Standards Act, Pennsylvania Minimum Wage Act, Pennsylvania Wage Payment and Collection Law, and unjust enrichment claims by settling the 2021 lawsuit against the City for backpay.[46] The City argues the Police Department K9 officers cannot allege a Pennsylvania Wage Payment and Collection Law claim because the Wage Payment and Collection Law offers employees a remedy for an employer's breach of a contract to pay wages and there are no allegations the City did not honor their collective bargaining agreement and the 2021 arbitration award.[47] The City argues the officers cannot allege an unjust enrichment claim because the collective bargaining agreement constitutes an express contract between the City and the officers.[48]

The officers oppose the City's Motion for judgment on the pleadings but consented to voluntarily dismissing the officers' Pennsylvania Minimum Wage Act, Pennsylvania Wage Payment and Collection Law, and unjust enrichment claims.[49] The officers argue the arbitration panel's 2021 award violated the Fair Labor Standards Act.[50] The officers argue the arbitration

panel's 2021 award does not constitute a "reasonable agreement" as defined by Congress because the officers receive two hours fewer overtime wages than did the K9 officers in *Krause v. Manalapan Township*.[51] The officers argue the arbitration panel's award mandates an illegal act because it violates the Fair Labor Standards Act.[52] The officers argue Congress through the Fair Labor Standards Act preempts the Pennsylvania statute mandating collective bargaining between the City and its Police Department.[53]

The City replied arguing whether an agreement between an employer and an employee is "reasonable" under the Fair Labor Standards Act depends on the parties considering all the pertinent facts regarding the employees' duties.[54] The City counters Officer O'Reilly and another officer offered testimony to the arbitration panel concerning their off-duty time caring for their K9 partners.[55] The City argues the arbitration panel did not mandate an illegal act in issuing its award because Congress through the Fair Labor Standards Act permits employers and employees to reach a reasonable agreement concerning compensation for off-duty work.[56] The City argues Congress through the Fair Labor Standards Act did not impliedly preempt the Pennsylvania statute mandating collective bargaining between the City and its police officers because the City can comply with the Fair Labor Standards Act and the collective bargaining statute at the same time.[57]

We agree with the City as a matter of law. The City and the Police Department K9 officers entered into a reasonable agreement under the Fair Labor Standards Act. We grant the City's Motion for judgment on the pleadings.

Congress through the Fair Labor Standards Act allows employers and employees to agree on compensation for time spent working at home.[58] Congress found it may be difficult to determine the exact hours an employee works from home and permits the employer and

employee to make a "reasonable agreement" which "takes into consideration all of the pertinent facts."[59] Our Court of Appeals held a township's discussion with K9 officers about the officers' responsibilities caring for their K9 partners before changing their compensation qualifies as considering all pertinent facts and satisfying Congress's requirements under the Fair Labor Standards Act.[60]

Our analysis of whether to look beyond the collectively bargained arbitration award begins with the Department of Labor Regulations at section 785.23. The issue hinges on the parties' ability to present all pertinent facts during the agreed arbitration concerning the employees' work completed at home.[61] The eventual terms of the award are immaterial to whether the agreement is reasonable as defined by Congress.[62] The employer and employee agreement satisfies Congress's requirements under the Fair Labor Standards Act so long as the parties present and consider all pertinent facts during their arbitration concerning their work from home responsibilities.[63]

We are guided by Judge Baxter's analysis last summer facing a distinct fact pattern leading her to deny an airport authority's motion to dismiss K9 officers' Fair Labor Standards Act claim concerning overtime pay.[64] The K9 officer in *Morell* worked at Erie International Airport.[65] The K9 officers and the airport authority agreed to a collective bargaining agreement setting the terms of the K9 officers' compensation.[66] The airport authority and the K9 officers agreed to increase the K9 officers hourly pay but did not state a reason for the wage increase.[67] The K9 officer sued the airport authority alleging it failed to pay him overtime wages to care for his K9 partner.[68] The airport authority countered the wage increase constituted a "reasonable agreement" under the Fair Labor Standards Act.[69] Judge Baxter found no pleaded facts allowing her to plausibly infer the K9 officers and the airport authority amended their collective

7

bargaining agreement after discussing the K9 officers' responsibilities in caring for their K9 partners.[70] Judge Baxter also found no pleaded facts the parties intended the pay increase to compensate the K9 officers for the time spent caring for their K9 partners.[71] Judge Baxter denied the airport authority's motion to dismiss finding no evidence of an agreement to compensate the K9 officers for their off-duty time nor evidence K9 officers and the airport authority considered all pertinent facts concerning the K9 officers care for their K9 partners.[72]

We face a different situation than Judge Baxter reviewed in *Morell*. The Police Department K9 officers do not plead they disclosed the pertinent facts of their care for their K9 partners to the City.[73] But the Police Department K9 officers do not plead facts about their binding interest arbitration with the City.[74] The City appends evidence the Police Department K9 officers' union and the City had the full and fair opportunity to adduce evidence and witness testimony before the arbitration panel during their 2021 arbitration hearing.[75] The City also confirms two K9 officers presented testimony about their responsibilities caring for their K9 partners.[76] The arbitration panel noted in September 14, 2021 award a pay increase for Police Department K9 officers "to reflect the additional off-duty time and expense required to care for the canines in their custody and control."[77]

The Police Department K9 officers presented days of evidence before the arbitration panel of the officers' responsibilities in caring for their K9 partners. The arbitration panel considered this evidence in rendering its arbitration award almost three years ago. The officers cannot now plead (1) no agreement existed between the City and the Police Department K9 officers concerning additional compensation; or (2) even if an agreement did exist, it fails to meet Congress's standards under the Fair Labor Standards Act because it is "unreasonable" simply because the officers are unhappy with the deal for which they bargained.

8

### III. Conclusion

We grant the City's motion for judgment on the pleadings and dismiss the Police Department K9 officers Fair Labor Standards Act claims. The Police Department K9 officers do not and cannot dispute the validity and fulsomeness of the arbitration proceeding. They instead do not like the result. They find it unfair. But they do not plead the arbitration panel violated the Fair Labor Standards Act. The pleaded facts are to the contrary; the K9 officers presented evidence and testimony before the arbitration panel and the arbitration panel considered all pertinent facts as to the officers' care responsibilities before increasing their pay. The officers are unable to plead facts the arbitration panel did not consider all pertinent facts in rendering its arbitration award. We dismiss the Police Department K9 officers' Fair Labor Standards Act claims with prejudice.

---

[1] ECF No. 1, ¶ 4.

[2] *Id.*

[3] *Id.* ¶ 49.

[4] *Id.* ¶ 4.

[5] *Id.*

[6] *Id.* ¶¶ 52–88.

[7] *Id.*

[8] *Id.* ¶ 24.

[9] *Id.* ¶ 25.

[10] *Id.* ¶ 27.

[11] *Id.*

[12] *Id.* ¶ 30.

[13] *See id.*

[14] *Id.* ¶ 31.

[15] *Id.* ¶ 32.

[16] *Id.*

[17] *Id.* ¶ 92.

[18] *Id.* ¶¶ 90–91.

[19] *Id.* ¶ 91.

[20] *O'Reilly v. City of Philadelphia*, No. 21-313, ECF No. 1 (E.D. Pa. Jan. 22, 2021).

[21] ECF No. 1 ¶ 44.

[22] *Id.* ¶¶ 48–49.

[23] *Id.* ¶¶ 69–106.

[24] *Id.* ¶ 107.

[25] *Id.*

[26] *Id.* ¶ 108.

[27] We may consider and review the documents pertaining to the binding interest arbitration because they are matters of public record. *Pena v. City of Lancaster*, No. 21-590, 2023 WL 5807005, at *4 (E.D. Pa. Sept. 7, 2023).

[28] ECF No. 6-3 at 2.

[29] *Id.*

[30] *Id.* at 5.

[31] ECF No. 6-2 at 3.

[32] *Id.* The City alleges Officer O'Reilly and one member of the putative K9 officer class testified concerning off-the-clock K9 partner care. ECF No. 6 ¶ 90.

[33] ECF No. 6-2 at 11.

---

[34] *See* ECF No. 6-2.

[35] *Id.* at 40–43.

[36] ECF No. 6-1 at 16.

[37] *Id.* at 5.

[38] *Id.* at 7. "Released Claims means any and all claims alleged, or which could have been alleged, in law or in equity in the Litigation, limited to the Collective Period, including those based on the FLSA, Pennsylvania law, and/or common law." *Id.*

[39] *Id.* "Any challenge or potential challenge of the Interest Arbitration Award relating to the K9 officers made or that otherwise could be made by the Plaintiffs is expressly excluded from the definition of Released Claims." *Id.*

[40] ECF No. 1 ¶¶ 103–131.

[41] *Id.* ¶ 122.

[42] *Id.* ¶¶ 111d, 118b, 124b, 131b.

[43] ECF No. 6; ECF No. 7.

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). We analyze motions for judgment on the pleadings "under the same standards that apply to a Rule 12(b)(6) motion." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). We "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 n.6 (3d Cir. 2022) (quoting *Wolfington*, 935 F.3d at 195). We may only grant a motion for judgment on the pleadings if "the movant clearly establishes" no "material issue of fact remains to be resolved" and the movant "is entitled to judgment as a matter of law." *Id.* (quoting *Wolfington*, 935 F.3d at 195). We may consider only "the complaint, exhibits attached to the complaint, matters of public record," and "undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[44] ECF No. 7-1 at 7.

[45] *Id.* (citing ECF No. 6-3 at 2). 43 PA. STAT. ANN. § 217.1 is the Pennsylvania Policemen and Firemen Collective Bargaining Act. Section 217.1 provides the means through which police and firemen "shall" bargain collectively to determine the terms and conditions of their employment and resolve grievances or disputes between the police and firemen and the City. *Id.*

[46] ECF No. 7 ¶¶ 3–6; ECF No. 7-1 at 10–11.

[47] ECF No. 7-1 at 17–18.

[48] *Id.* at 18–19.

[49] ECF No. 11 at 1.

[50] *Id.* at 1–5.

[51] *Id.* (citing *Krause v. Manalapan Twp.*, 486 F. App'x 310 (3d Cir. 2012)).

[52] *Id.* at 5–6.

[53] *Id.* at 6–7.

[54] ECF No. 12 at 1–3 (citing 29 C.F.R. § 785.23).

[55] *Id.* at 2–3.

[56] *Id.* at 5–7.

[57] *Id.* at 8.

[58] 29 C.F.R. § 785.23. We need not consider the Police Department K9 officers' Pennsylvania state law claims or their unjust enrichment claims because the officers consented to their dismissal.

[59] *Id.*

[60] *Krause*, 486 F. App'x at 313–14.

[61] *Id.* at 312.

[62] *Diorio v. Vill. of Tinley Park*, No. 11-6724, 2012 WL 2681298, at *3 (N.D. Ill. July 6, 2012).

[63] *Id.*

[64] *Morell v. Erie Reg'l Airport Auth.*, No. 22-278, 2023 WL 5237580 (W.D. Pa. Aug. 15, 2023). The standards for reviewing a motion to dismiss and a motion for judgment on the pleadings are indistinguishable. *Thompson v. Real Est. Mortg. Network, Inc.*, 106 F. Supp. 3d 486, 489 (D.N.J. 2015).

[65] *Morell*, 2023 WL 5237580 at *1.

---

[66] *Id.*

[67] *See id.* at *2.

[68] *Id.*

[69] *Id.* at *3.

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *See* ECF No. 1.

[74] *Id.*

[75] ECF No. 6-2 at 3.

[76] ECF No. 6 ¶ 90.

[77] ECF No. 6-3 at 5.